1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10

----oo0oo----

11

12
JANET YOUNG and EDWARD YOUNG,

NO. CIV. S-05-1639 FCD GGH

13
        Plaintiffs,

14
    v.

MEMORANDUM AND ORDER

15
COASTAL ISLAND CHARTERS,
MICHAEL BAUER, and LORI

16
BAUER,

17
        Defendants.

18
----oo0oo----

19
    This matter is before the court on defendants Coastal Island

20
Charters, Michael Bauer and Lori Bauer's (collectively,

21
"defendants") motion for transfer of venue pursuant to 28 U.S.C.

22
§ 1404(a).[1]  Defendants do not challenge the propriety of venue

23
in the Eastern District of California, but argue that the United

24
States District Court of Alaska is the more convenient forum.

25
Plaintiffs Janet Young and Edward Young ("plaintiffs") oppose the

26

27
    [1]    Because oral argument will not be of material

28
assistance, the court orders this matter submitted on the briefs.
See E.D. Cal. Local Rule 78-230(h).

1

1  motion arguing that the balance of factors weigh heavily in their

2  favor, meriting retention of the case in this district.

3      For the reasons set forth below, the court DENIES

4  defendants' motion.  While the operative facts of the incident

5  occurred in Alaska, plaintiffs' choice of forum should be

6  afforded substantial deference since defendants personally

7  solicited plaintiffs' business in this district on numerous

8  occasions and the contract forming the basis of the parties'

9  relationship was entered into here.

10                          **BACKGROUND**

11      This is an action for negligence by common carrier,

12  negligence and loss of consortium filed by plaintiffs against

13  defendant Coastal Island Charters ("Coastal") and its owners

14  defendants Michael and Lori Bauer (the "Bauers").  (Compl., filed

15  Aug. 16, 2005.)  The premise of Coastal's business is to share

16  the Bauers' love of fishing and exploring the beautiful Southeast

17  Alaska.  (L. Bauer Decl., filed Oct. 25, 2005, ¶ 3.)

18      In January 1998, plaintiffs first met the Bauers at the

19  Sportsman's Expo in San Mateo, California.  The Bauers were

20  soliciting for fishing trips they ran in Alaska.  Plaintiffs

21  agreed to purchase a trip and went on the trip with the Bauers in

22  the summer of 1998. (J. Young Decl., filed Nov. 15, 2005, ¶ 2.)

23      Thereafter, on a number of occasions between 1998 and 2004,

24  plaintiffs personally met with the Bauers at the Sportsman's Expo

25  in either San Mateo or Sacramento, California.  Again, on these

26  occasions, the Bauers were soliciting business for their fishing

27  trips.  Plaintiffs attest that at least once every year between

28  1998 and 2004, and probably more, the Bauers solicited business

                              2

1   at a Sportsman's Expo in Northern California. (<u>Id.</u> at ¶ 3.)

2        On January 18, 2004, plaintiffs again met the Bauers at the

3   Sportsman's Expo in Sacramento and contracted for a five-day

4   fishing trip for the summer.  That day, plaintiffs wrote a

5   $2,000.00 check to the Bauers as a deposit for the trip.  (<u>Id.</u> at

6   ¶ 4.)

7        While on the trip, on June 18, 2004, plaintiff Janet Young

8   was in the dining/main room of the Bauers' boat.[2]  At that time,

9   the only other person in the room was the Bauers' employee, Ms.

10  Kelly.  Ms. Kelly opened a hatch in the floor while plaintiff's

11  back was turned.  Plaintiff alleges Ms. Kelley did not say or do

12  anything to warn her of the hazard.  When plaintiff turned back

13  around, she fell through the open hatch and shattered her ankle.

14  (<u>Id.</u> at ¶ 5.)

15       According to defendants, Ms. Kelly was preparing to store

16  the morning catch in a freezer below the main salon deck.  (L.

17  Bauer Decl., ¶ 18.)  As is the crew's custom and practice,

18  alleges defendants, Ms. Kelly announced aloud, "I'm opening the

19  hatch," then opened the hatch while plaintiff was standing a

20  short distance away.  (<u>Id.</u> at ¶ 19.)  Plaintiff walked into the

21  open hatch and injured her right ankle.  (<u>Id.</u> at ¶ 20.)

22       The boat returned to Sitka, Alaska, approximately 5 hours

23  away, in order to seek medical treatment for plaintiff's ankle.

24  (<u>Id.</u> at ¶ 21.)  Once at the dock, while the paramedics and EMTs

25  from Sitka were seeing to plaintiff, defendants allege plaintiff

26

27       [2]   The other passengers onboard included Eddie Young,
    plaintiffs' son, and Dennis Meeno, a business associate of
28  plaintiffs.

                                    3

1   stated to the medical personnel that the incident was "nobody's

2   fault" and it was clearly an accident.  (Defs.' Counsel's Decl.,

3   filed Oct. 25, 2005, ¶ 3.)

4        Plaintiff was then transported to the Sitka Medical Center

5   by ambulance where she was seen by Dr. John Totten, the on-call

6   surgeon.  (L. Bauer Decl., ¶ 24.)  Dr. Totten informed plaintiff

7   that he was capable of performing the surgery on plaintiff's

8   foot.  (Id. at ¶ 25.)  He also discussed with plaintiff whether

9   he believed it was advisable and necessary to have plaintiff

10  transported by Medivac to a hospital in California.  (Id.)  At

11  plaintiff Edward Young's request, a Medivac plane was summoned,

12  and Janet Young was air-lifted to a medical facility in

13  Sacramento.  (Id. at ¶ 27.)

14       The Bauers have lived full-time in Alaska since 1976.

15  Besides the Bauers, Coastal's only other crew member at the time

16  of the incident was Ms. Kelly, a twenty-eight year old deckhand.

17  (Id. at ¶ 5.)  Ms. Kelly lives in Alaska from June through

18  September and in Eatonville, Washington from October through May

19  where she serves as a care provider for disabled individuals.

20  (Id. at ¶ 6.)

21       Coastal is a business organized under the laws of the State

22  of Alaska with its principal executive office, located for the

23  last eleven years, in Wrangell, Alaska.  (Id. at ¶s 7-8.)

24  Coastal has never had any operations, office or telephone number

25  in California.  (Id. at ¶ 9.)  The boat at issue, the *MV*

26  *Huntress*, is a 60-foot vessel owned by the Bauers and regularly

27  used during the months of May through September to charter

28  fishing trips in the waters off of the coast of Alaska.  (Id. at

4

1  ¶ 10.)  Since the Bauers purchase of the *MV Huntress*, it has only

2  been registered and documented in the State of Alaska.  (Id. at ¶

3  11.)  The money earned from fishing charters during the months of

4  May to September is the Bauers' only source of income.  (Id. at ¶

5  13.)

6                                **STANDARD**

7       Under 28 U.S.C. § 1404(a), a district court may "for the

8  convenience of parties and witnesses, in the interest of justice

9  . . . transfer any civil action to any other district where it

10 might have been brought."  28 U.S.C. § 1404(a).  A defendant

11 moving to transfer venue under section 1404(a) must therefore

12 satisfy both of the following requirements: (1) the transferee

13 district is one in which the action might have been brought

14 originally; and (2) transfer will enhance the convenience of the

15 parties and witnesses, and is in the interests of justice.  See

16 Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).

17      In considering the second requirement, the court evaluates

18 the following:

19              (1) the location where the relevant agreements
                were negotiated and executed, (2) the state that
20              is most familiar with the governing law, (3)
                the plaintiff's choice of forum, (4) the respective
21              parties' contacts with the forum, (5) the
                contacts relating to the plaintiff's cause of
22              action in the chosen forum, (6) the differences
                in costs of litigation in the two forums, (7)
23              the availability of complusory process to compel
                attendance of unwilling non-party witnesses, and
24              (8) ease of access to sources of proof.

25 Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir.

26 2000).

27

28

5

**ANALYSIS**

Plaintiffs do not dispute that this action properly could have been brought in the United States District Court of Alaska since defendants reside there.  28 U.S.C. § 1391(a).  Thus, the only question before the court is whether transfer to Alaska will serve "the convenience of [the] parties and witnesses" and will promote the interest[s] of justice."  28 U.S.C. § 1404(a).

Considering the above facts in light of the factors described in <u>Jones</u>, the court finds defendants have failed to demonstrate that transfer is warranted:

First, the location of the relevant agreement favors litigation in this court.  Plaintiffs entered a contact with the Bauers for the June 2004 fishing trip in Sacramento, California. The contract was made as a result of the Bauers' solicitation of business in this district, through their personal appearance at the Sportsman's Expo in Sacramento.  Moreover, the Bauers do not dispute plaintiffs' testimony that they met the Bauers on numerous occasions between 1998 and 2004 in Northern California, when the Bauers were soliciting business through various Sportsman's Expos.  Indeed, despite plaintiffs' testimony, the Bauers have not provided the court with any specific information regarding their solicitation of business in California, including locations and frequency.

Second, this court is the most familiar with the governing law--California negligence law.  (Compl. at ¶ 12 [regrading negligence by a common carrier as defined by Cal. Civ. Code § 2186 *et seq.*].)  Moreover, were the case to be transferred to Alaska, the Alaska court would be bound to apply California law.

1 <u>Van Dusen</u>, 376 U.S. at 637-39 (when transfer is granted under

2 § 1404(a), the transferee court in a diversity action must apply

3 the law of the state in which the action was originally filed).

4     Third, where a plaintiff's choice of forum is his place of

5 residence, as in this case, a defendant must make a "strong

6 showing of inconvenience to warrant upsetting the plaintiff's

7 choice of forum." <u>Decker Coal Co. v. Commonwealth Edison Co.</u>,

8 805 F.2d 834, 843 (9th Cir. 1986).  Here, defendants have not

9 done so.  While they maintain that participating in litigation in

10 this district would be detrimental to their "small" business,

11 plaintiffs' unrebutted testimony of the Bauers' personal presence

12 in this district, and within Northern California generally, to

13 solicit business belies defendants' contentions.  Because it

14 appears that defendants regularly conduct business in this

15 district to recruit clients, they cannot persuasively argue that

16 it would be a detriment to their business to be a party to

17 litigation in this district.  Indeed, a Northern California venue

18 would seem expected given the extent and frequency of defendants'

19 contacts with Northern California.

20     Additionally, defendants have not shown that the convenience

21 of the relevant non-party witnesses favors Alaska.  Defendants

22 concede that plaintiffs' son and business associate (both present

23 on the trip) and plaintiff's surgeon, treating physician and

24 other healthcare providers reside in California.  Yet, defendants

25 argue that, more importantly, Ms. Kelly, the central person

26 involved in the incident, the two Sitka EMTs, whom defendants

27 allege overheard plaintiff state the incident was "nobody's

28 fault," Dr. Trotten, and the "Medivac pilot" live in Alaska.

1  Defendants' argument, however, is unavailing because it misstates
2  the facts and/or emphasizes witnesses who are not central to this
3  case.  Regarding Ms. Kelly, by defendants' own admission, she
4  lives only *part-time* in Alaska; outside of the fishing season
5  (May to September), she lives in the State of Washington.  Thus,
6  her residence is of limited importance in resolving the dispute
7  over convenience between California and Alaska.  As to plaintiff
8  Janet Young's alleged statement to the Sitka EMTs, defendants
9  have not provided admissible testimony on this issue, and
10 therefore the court does not consider it in ruling on the motion.
11 Cochran v. NYP Holdings, Inc., 58 F. Supp. 2d 1113, 1119 (C.D.
12 Cal. 1998) ("the moving party must demonstrate, through
13 affidavits or declarations containing *admissible evidence*, who
14 the key witnesses will be and what their testimony will generally
15 include") (emphasis added.)[3]  Finally, regarding Dr. Totten and
16 the unnamed "Medivac pilot," their involvement in this case is
17 minimal, and as such, the convenience of these witnesses does not
18 weigh heavily in the analysis.
19     In sum, on balance, the majority of the critical non-party
20 witnesses reside in California, rendering this factor in favor of
21 plaintiffs.  Taken in combination with plaintiffs' *choice* of this
22 forum and defendants' contacts with the forum, particularly in
23 this district, the court finds that this factor weighs
24 considerably in favor of retention of this case in this district.
25     Fourth, regarding the relevant costs, because of the
26 location of the majority of witnesses, and considering the

27
28     [3]  The court considers herein plaintiffs' objections only
       as they pertain to facts relevant to the court's decision.

8

1  Bauers' frequent business travels to California, it would likely

2  be more costly to litigate this case in Alaska.  The court is

3  mindful of the fact that the subject boat is located in Alaska

4  and that part of the discovery in this matter may require travel

5  to Alaska to view and inspect the boat.  However, that fact

6  alone, when considered on balance with the other issues discussed

7  herein, does not merit transfer of venue.

8       Finally, for similar reasons, defendants' showing with

9  regard to access to sources of proof is also unavailing.

10  Initially, the court notes that defendants concede that the

11  location of the documentary evidence in this case does not

12  significantly favor either forum; some of the relevant

13  documentary evidence is in Alaska, including documents regarding

14  the *MV Huntress* itself and Coastal's business, while other

15  documentary evidence is in California, including plaintiff's

16  medical records.  Thus, there is no basis to assume that it would

17  be any more convenient or less burdensome to transport the

18  relevant documents to Alaska rather than to California.

19       Setting aside the documentary evidence, defendants solely

20  base their argument on the need for access to the *MV Huntress*

21  itself, both during the course of discovery and at trial (for

22  review by the jury).  As stated above, while inspection of the

23  boat may be necessary by the parties, their attorneys, and

24  experts during discovery, this fact alone does not warrant a

25  transfer of venue.  As to any inspection by the jury at trial,

26  defendants have not demonstrated why diagrams, pictures, models,

27  reports, and records could not provide ample evidence for the

28  trier of fact; moreover, absent extraordinary circumstances, such

9

1  a request for an actual inspection of the boat by the jury would

2  likely be denied by a court, be it in Alaska or California.

3       Therefore, for all of the above reasons, the court DENIES

4  defendants' motion to transfer venue because defendants have not

5  met their burden to show that the convenience of witnesses and

6  interests of justice warrant transfer of this case.

7       IT IS SO ORDERED.

8   DATED: December 12, 2005

9

10                              /s/ Frank C. Damrell Jr.
                                FRANK C. DAMRELL, Jr.
11                              UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10